UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| THE AMERICAN POLICY ROUNDTABLE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:19-CV-00535 |
| HERITAGE ALLIANCE, | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, The American Policy Roundtable ("Plaintiff"), by counsel, for its Complaint against Defendant, Heritage Alliance ("Defendant"), alleges as follows:

**PARTIES**

1. Plaintiff is a non-profit corporation duly organized and existing under the laws of the State of Ohio, with a principal place of business within this judicial district at 11288 Alameda Drive, Strongsville, Ohio 44149, Cuyahoga County.

2. Upon information and belief, Defendant is a nonprofit corporation having its principal office located in Dallas, Texas.

**JURISDICTION AND VENUE**

3. This Court has original subject matter jurisdiction over all counts alleged in this complaint pursuant to: 15 U.S.C. § 1121, in that they all arise under the Federal Trademark (Lanham) Act (15 U.S.C. § 1051 *et seq.*); 28 U.S.C. § 1338(a), in that all claims arise under an Act of Congress relating to trademarks; and 28 U.S.C. § 1331, in that all claims arise under the

1

laws of the United States.

4. This Court has personal jurisdiction over Defendant as, upon information and belief: Defendant does business in this judicial district; the Defendant's infringing services complained of herein are offered within this judicial district; and Defendant has caused harm within this judicial district.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## FACTUAL BACKGROUND

### A. Plaintiff and the IVOTERS Mark

6. Plaintiff has been a pioneer in the field of non-partisan voter information since 1980. In 1998, Plaintiff established one of the first online voter information sites. Plaintiff's iVoters.com website has grown into one of the most visited voter information sites in America.

7. In addition to its online presence, Plaintiff delivers to churches and individuals print publications that provide non-partisan information related to elections, candidates, and public policy. Plaintiff conducts significant research and meets with political candidates to determine their stances on policy issues, all in order to provide consumers with the most accurate and reliable information.

8. Plaintiff is the owner of the trademark IVOTERS and formatives thereof for use in connection with a website that provides information on current political campaigns, candidates, elections, and public policy issues throughout the United States. These services are offered in U.S. interstate commerce over the Internet at the domain <ivoters.com> (hereinafter the "IVOTERS Services" or "Plaintiff's Website").

9. Plaintiff's Website "allows people in all 50 states [to] get the facts about

candidates and ballot issues from a non-partisan, independent source." Exhibit A.

10. As part of the IVOTERS Services, Plaintiff also provides voter information, conducting analysis (both on-air and off) for major commercial media outlets such as KDKA in Pittsburgh, PA, WTN in Nashville, TN, WTAM in Cleveland, OH and additional print and online services. Plaintiff's key principals do frequent media interviews through election season and specifically on-air election night co-hosting for media outlets across the country.

11. Since at least as early as February 23, 2010, Plaintiff has used the IVOTERS mark or formatives thereof continuously in U.S. interstate commerce, including in Ohio, in connection with the IVOTERS Services.

12. In connection with the IVOTERS Services, Plaintiff owns the following United States trademark registrations:

> IVOTERS.COM FREE MINDS FREE SPEECH FREEAGENTS – U.S. Reg. No. 4,021,472 for use in connection with providing a web site of information on current public policy issues, political campaigns and citizen concerns related to political issues. Registered September 6, 2011, with a date of first use of February 23, 2010; and
>
> IVOTERS FREE MINDS FREE SPEECH FREE AGENTS & Design – U.S. Reg. No. 5,039,154 for use in connection with providing a web site of information on current public policy issues, political campaigns and citizen concerns related to political issues. Registered September 13, 2016, with a date of first use of July 15, 2014.

Printouts from the U.S. Patent and Trademark Office's database (TSDR) evidencing the current status and ownership of the above registrations (the "IVOTERS Registered Marks") are attached as Exhibit B.

13. Pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), Plaintiff's

federal registration certificates are *prima facie* evidence of the validity of the IVOTERS Registered Marks, Plaintiff's ownership of the registered trademarks, and Plaintiff's exclusive right to use the registered trademarks in connection with the services specified in the certificates of registration.

14. Due to the importance of the IVOTERS brand, Plaintiff has filed the following additional trademark applications with the United States Patent and Trademark Office:

> IVOTERS – U.S. App. Serial No. 88/271,491 for use in connection with providing a web site of information on current public policy issues, political campaigns and citizen concerns related to political issues. Filed January 22, 2019, with a date of first use of June 9, 2010; and

> IVOTERS.COM – U.S. App. Serial No. 88/271486 for use in connection with providing a web site of information on current public policy issues, political campaigns and citizen concerns related to political issues. Filed January 22, 2019, with a date of first use of June 9, 2010.

Printouts from the U.S. Patent and Trademark Office's database (TSDR) evidencing the current status and ownership of the above applications (the "IVOTERS Applied-For Marks") are attached as Exhibit C.

15. In addition to the IVOTERS Registered Marks, due to Plaintiff's nationwide use and promotion of the IVOTERS Services for more than eight years, Plaintiff possesses significant common-law rights in the IVOTERS mark (Plaintiff's common-law rights in IVOTERS and formatives thereof, together with the IVOTERS Registered Marks and IVOTERS Applied-For Marks, are referred to collectively as the "IVOTERS Mark").

16. Plaintiff has invested much time and significant resources in developing, promoting, and marketing the IVOTERS Services and in establishing Plaintiff's Website in the

minds of consumers as being a source of high-quality, reliable, non-partisan information.

17. The IVOTERS Mark, and the IVOTERS Services, are promoted regularly on a network of 200 radio stations as well as many other media outlets across the country.

18. The IVOTERS Mark has become favorably known among consumers as used in connection with Plaintiff's Website and has become a valuable symbol of the source of the IVOTERS Services, of the high quality of those services, and of the goodwill associated with the IVOTERS Mark.

19. The IVOTERS Mark has become associated exclusively with Plaintiff in the minds of consumers.

**B. Defendant's Infringing Acts**

20. After Plaintiff began use of the IVOTERS Mark, and after that mark became well known and associated with Plaintiff, Defendant launched a website that provides information on current political campaigns, elections, candidates, and public policy issues throughout the United States, under the name IVOTERGUIDE ("Defendant's Website"). Defendant's Website is located at the domain <ivoterguide.com>.

21. But unlike Plaintiff's Website, Defendant's Website has a mission: "to empower the handful of citizens necessary to restore the principles of limited government, free enterprise, and traditional Judeo-Christian values." Exhibit D.

22. After Plaintiff applied for federal registration of the IVOTER Mark, and notwithstanding Plaintiff's nationwide prior constructive rights in the mark, on June 23, 2015, Defendant filed a federal trademark application for the IVOTERGUIDE & Design Mark in connection with "providing a website featuring information regarding candidates for public

office," which registered on June 21, 2016, as Reg. No. 4,981,328 (the "IVOTERGUIDE Registration"). *See* Exhibit E. (The IVOTERGUIDE Registration, together with the word mark IVOTERGUIDE and formatives thereof, are referred to collectively as the "IVOTERGUIDE Mark.")

23. Like Plaintiff's Website, Defendant's Website is intended for use by U.S. voters to enter a location to search for information on the candidates running for political office in a particular district or state, as well as nationally.

24. Upon information and belief, Defendant's Website is directed toward American voters seeking information about candidates running for U.S. public office through the same channels of trade as Plaintiff's Website.

25. Plaintiff has not authorized, licensed, or otherwise endorsed the use of the confusingly similar mark IVOTERGUIDE by Defendant.

26. Plaintiff is aware of multiple instances of actual consumer confusion as a result of Defendant's use of the IVOTERGUIDE Mark in connection with Defendant's Website.

27. Notwithstanding Plaintiff's objections to Defendant's adoption and use of the IVOTERGUIDE Mark, Defendant continues to use the IVOTERGUIDE Mark in connection with Defendant's Website.

## COUNT I
## INFRINGEMENT OF REGISTERED MARKS

28. Plaintiff repeats the allegations in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

29. Defendant, without the consent or authorization of Plaintiff, has used and is using

the IVOTERGUIDE Mark, which is confusingly similar to the IVOTERS Registered Marks, in connection with services identical to the IVOTERS Services, and such use is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and of Defendant's Website with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's Website.

30. The goodwill of the IVOTERS Registered Marks is of significant value, and Plaintiff is suffering and will continue to suffer irreparable harm, in particular, to its reputation for independent, non-partisan information, should Defendant continue its unauthorized offering of Defendant's Website under the confusingly similar mark IVOTERGUIDE.

31. The acts of Defendant in its unauthorized use of the confusingly similar IVOTERGUIDE Mark in connection with Defendant's Website are intended to, and will, divert to Defendant the benefit of the reputation and goodwill symbolized by the IVOTERS Registered Marks, which belong exclusively to Plaintiff.

32. Defendant's acts constitute infringement of the IVOTERS Registered Marks under 15 U.S.C. § 1114(1)(a).

33. Defendant's acts of trademark infringement are knowing, intentional, and willful.

34. As a result of Defendant's acts of trademark infringement, Plaintiff is suffering irreparable harm.

35. Unless and until Defendant is enjoined by this Court, Defendant will continue to commit acts of trademark infringement and will continue to confuse the public and cause irreparable harm to Plaintiff.

36. Plaintiff is entitled to a permanent injunction against Defendant, as well as

corrective advertising permitted under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT II
## OHIO COMMON-LAW TRADEMARK INFRINGEMENT

37.     Plaintiff repeats the allegations in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

38.     By making unauthorized use of the confusingly similar IVOTERGUIDE Mark in connection with services identical to Plaintiff's, Defendant is likely to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendant's Website, or as to affiliation, connection, or association with, or certification by, Plaintiff.

39.     Defendant's acts constitute deceptive trade practices under Ohio Rev. Code Ann. § 4165.02(A).

40.     Plaintiff has been damaged, and is likely to continue to be damaged, as a result of Defendant's deceptive trade practices.

41.     Pursuant to Ohio Rev. Code Ann. § 4165.03, Plaintiff is entitled to injunctive relief.

## COUNT III
## FALSE DESIGNATION OF ORIGIN

42.     Plaintiff repeats the allegations in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

43.     By making unauthorized use of the confusingly similar IVOTERGUIDE Mark in connection with services identical to Plaintiff's, Defendant is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and Defendant's Website with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's

Website.

44. Defendant's acts constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

45. As a result of Defendant's acts of false designation of origin, Plaintiff is suffering irreparable harm.

46. Unless and until Defendant is enjoined by this Court, Defendant will continue to commit acts of false designation of origin and will continue to confuse the public and cause irreparable harm to Plaintiff.

47. Plaintiff is entitled to a permanent injunction against Defendant, as well as corrective advertising permitted under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT IV
## CANCELLATION OF DEFENDANT'S U.S. REG. NO. 4,981,328

48. Plaintiff repeats the allegations in paragraphs 1 through 27 of this Complaint as though fully set forth herein.

49. Defendant obtained a registration of the IVOTERGUIDE Mark under U.S. Registration No. 4,981,328, issued on June 21, 2016.

50. Defendant's IVOTERGUIDE Mark, when used in connection with the services recited in Reg. No. 4,981,328, so resembles Plaintiff's mark, which was registered in the Patent and Trademark Office and previously used in the United States by Plaintiff and not abandoned, as to be likely to cause confusion, or to cause mistake, or to deceive in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

51. Pursuant to Section 1119 of the Lanham Act, 15 U.S.C. § 1119, in any action

involving a registered mark, the court may determine the right to registration and order the cancellation of a registration, in whole or in part.

52. Defendant is not entitled to registration of the IVOTERGUIDE Mark, which infringes Plaintiff's IVOTERS Mark and is likely to cause confusion, mistake, or deception, such that Reg. No. 4,981,328 should be ordered cancelled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

A. Adjudging that Defendant's use of the IVOTERGUIDE Mark is trademark infringement under 15 U.S.C. § 1114;

B. Adjudging that Defendant's use of the IVOTERGUIDE Mark constitutes common-law trademark infringement and deceptive trade practices under Ohio Rev. Code Ann. § 4165.02(A);

C. Adjudging that Defendant's use of the IVOTERGUIDE Mark is false designation of origin under 15 U.S.C. § 1125;

D. Requiring that Defendant and its officers, agents, servants, employees, attorneys, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from:

> 1. Using the IVOTERGUIDE Mark or any other names, marks, slogans or domain names, in connection with providing a website featuring information on candidates for public office, public policy issues, political campaigns, or any related goods or services;
>
> 2. Doing any other act or thing likely to induce the mistaken belief that

Case: 1:19-cv-00535-PAB Doc #: 1 Filed: 03/11/19 10 of 12. PageID #: 10

involving a registered mark, the court may determine the right to registration and order the cancellation of a registration, in whole or in part.

52. Defendant is not entitled to registration of the IVOTERGUIDE Mark, which infringes Plaintiff's IVOTERS Mark and is likely to cause confusion, mistake, or deception, such that Reg. No. 4,981,328 should be ordered cancelled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

A. Adjudging that Defendant's use of the IVOTERGUIDE Mark is trademark infringement under 15 U.S.C. § 1114;

B. Adjudging that Defendant's use of the IVOTERGUIDE Mark constitutes common-law trademark infringement and deceptive trade practices under Ohio Rev. Code Ann. § 4165.02(A);

C. Adjudging that Defendant's use of the IVOTERGUIDE Mark is false designation of origin under 15 U.S.C. § 1125;

D. Requiring that Defendant and its officers, agents, servants, employees, attorneys, and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from:

1. Using the IVOTERGUIDE Mark or any other names, marks, slogans or domain names, in connection with providing a website featuring information on candidates for public office, public policy issues, political campaigns, or any related goods or services;

2. Doing any other act or thing likely to induce the mistaken belief that

Defendant or Defendant's Website are in any way affiliated, connected, or associated with Plaintiff or the IVOTERS Services, or doing any other act or thing likely to cause confusion, mistake, or deception with respect to Plaintiff's IVOTERS Mark;

  3. Trading on the goodwill associated with the IVOTERS Mark;

  4. Injuring Plaintiff's business reputation and the goodwill associated with the IVOTERS Mark and from otherwise unfairly competing with Plaintiff and his licensee in any manner whatsoever.

 E. That, pursuant to 15 U.S.C. § 1116, Defendant be directed to file with this Court and to serve on Plaintiff, within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

 F. That Defendant be directed to take any and all actions the court deems reasonable to correct the confusion and misimpression Defendant has created through use of the IVOTERGUIDE Mark, including but not limited to:

  1. Contacting all current and former donors to inform them that Defendant is not now and has never been affiliated with, sponsored by, or endorsed by Plaintiff, and that Defendant is changing its name to prevent any confusion in the future;

  2. Engaging in corrective advertising on any platforms and through any channels previously used by Defendant to advertise Defendant's Website; and

  3. To the extent the <ivoterguide.com> Internet domain remains accessible

to the public, replacing the current content on the website at that domain with a statement that Defendant is not now and has never been affiliated with, sponsored by, or endorsed by Plaintiff, and that Defendant is changing its name to prevent any confusion in the future.

G. That Plaintiff be awarded all reasonable attorneys' fees, costs, and disbursements incurred by Plaintiff as a result of this action, pursuant to 15 U.S.C. § 1117(a); and

H. That Plaintiff be awarded any such other and further relief as this Court deems just and proper.

Dated: March 11, 2019          Respectfully submitted,

<p style="margin-left:50%">
/s/ William R. Martin<br>
William R. Martin<br>
(Ohio Federal Bar # 0033955)<br>
Jordan S. Weinstein<br>
(*Pro Hac Vice Forthcoming*)<br>
BARNES & THORNBURG LLP<br>
1717 Pennsylvania Avenue N.W.<br>
Suite 500<br>
Washington, D.C. 20006-4623<br>
P:202-289-1313<br>
F:202-289-1330<br>
e-mail:<br>
billy.martin@btlaw.com<br>
jordan.weinstein@btlaw.com<br>
<br>
*Attornerys for Plaintiff, The American Policy Roundtable*
</p>